Rachel Mariner, NV Bar No. 16728
Jason Kuller, NV Bar No. 12244
**RAFII & ASSOCIATES, P.C.**
1120 N. Town Center Dr., Ste. 130
Las Vegas, Nevada 89144
Phone: 725.245.6056
Fax: 725.220.1802
rachel@rafiilaw.com
jason@rafiilaw.com

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

RAYSHAWN JENKINS

Plaintiff,

v.

LAST MILE DSP LLC, a Nevada limited-liability company; AMAZON LOGISTICS INC., a foreign limited liability company and DOES 1-50, inclusive,

Defendants.

Case No.

**COMPLAINT FOR DAMAGES**

**COLLECTIVE ACTION COMPLAINT FOR:**

1. Failure to Pay Minimum Wages in Violation of the FLSA, 29 U.S.C. § 206;
2. Failure to Pay Overtime in Violation of the FLSA, 29 U.S.C. § 207

**CLASS ACTION COMPLAINT**

3. Failure to Pay Wages for Each Hour Worked in Violation of NRS 608.016;
4. Failure to Pay Overtime in Violation of NRS 608.018;
5. Failure to Timely Pay All Wages Due and Owing in Violation of NRS 608.020-050;
6. Unjust Enrichment;
7. Breach of Contract

**JURY TRIAL DEMANDED**

Plaintiff Rayshawn Jenkins, on behalf of himself and all others similarly situated, alleges as follows:

/ / /

/ / /

/ / /

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

## INTRODUCTION

1. This is a class and collective action for unpaid wages and overtime, waiting time penalties, restitution/unjust enrichment, liquidated damages, attorneys' fees, costs, and interest arising from Defendants' common policies and practices that failed to pay delivery drivers for all hours worked and all overtime due, including through one-way rounding, automatic meal period deductions despite on-duty work, denial of rest periods, and manipulation of time records.

2. Plaintiff asserts claims under: (a) the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA") (collective action); and (b) Nevada Revised Statutes ("NRS") Chapter 608, including NRS 608.018 (overtime), NRS 608.016 (all wages for each hour worked), and NRS 608.020–.050 (waiting time penalties) (the latter, the Rule 23 classes) and claims under Nevada common law (unjust enrichment and breach of contract).

3. All allegations in this Complaint are based on information and belief except for those allegations pertaining specifically to Plaintiff, which are based on Plaintiff's personal knowledge.

4. Each allegation in this Complaint either has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

## PARTIES

3. Plaintiff RAYSHAWN JENKINS ("Plaintiff" or "Mr. Jenkins") is a natural person and resident of Clark County, Nevada, who worked for Last Mile DSP LLC as a non-exempt delivery driver during the relevant period. Plaintiff was a driver for Last Mile DSP, an Amazon Delivery Service Partner (DSP) operating in Nevada.

4. Defendant LAST MILE DSP LLC ("Last Mile" or "Defendant") is a Nevada limited-liability company doing business in Clark County, Nevada, and at all relevant times employed Plaintiff and the putative collective and classes.

5. Defendant AMAZON LOGISTICS INC ("Amazon" or "Defendant") is a foreign corporation doing business in Clark County, Nevada under Business ID NV2018108809, and at all relevant times was co-employer of the Plaintiff and the putative collective and classes.

6. Last Mile, Amazon, and Does 1-50 are collectively referred to herein as "Defendants".

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

7. The identities of Does 1–50 are unknown. Plaintiff alleges each Doe is responsible in some manner for the acts and omissions alleged and will amend to name them when ascertained.

8. "FLSA Collective Members" are all current and former hourly workers employed by Last Mile and Amazon in Nevada within three years before the filing of this Complaint until the date of judgment (the "FLSA Collective Period").

9. "Nevada Class Members" are all current and former hourly workers employed by Last Mile and Amazon in Nevada within four years before the filing of this Complaint until the date of judgment (the "Nevada Class Period").

10. Any reference in this Complaint to "Mr. Jenkins", "Plaintiffs" and "Plaintiff Drivers" shall mean Plaintiff, FLSA Collective Members and Nevada Class Members.

11. Any reference in this Complaint to "Last Mile", "Amazon", "Doe Defendant" and "Defendants" shall mean "Defendants and each of them."

**ALTER EGOS, AGENCY, AND CONSPIRACY**

12. Plaintiff incorporates and realleges all paragraphs above.

13. At all relevant times, Amazon retained ultimate control over the policies, operations, decisions and direction of Last Mile DSP LLC.

14. While the Defendants may be business entities putatively separate from each other, there exists such a unity of interest and commonality of control, including Amazon providing a mandatory application for Plaintiff Drivers to track their time, commingling of funds, lack of adequate capitalization, failure to maintain proper books and records, and additional omissions, that there truly is little to no separation or distinction among Defendants. Defendants' business entities are and were mere instrumentalities, shells and alter egos of each other such that adherence to the fiction of a separate business entity should be ignored and the entities treated as though they were one and the same.

15. At all relevant times, each Defendant was an agent, employee, joint venturer, shareholder, director, member, co-conspirator, alter ego, master, or partner of the other Defendants, and at all times mentioned herein were acting within the scope and course and in pursuance of his,

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

her, their or its agency, joint venture, partnership, employment, common enterprise, or actual or apparent authority in concert with other Defendants.

16. At all relevant times, the acts and omissions of Defendants concurred and contributed to the various acts and omissions of other Defendants in proximately causing the complaints, injuries and damages alleged herein. At all relevant times, Defendants approved of, condoned or otherwise ratified each and every one of the acts of omissions complained of herein. At all relevant times, Defendants aided and abetted the acts and omissions of other Defendants thereby proximately causing the damages herein alleged.

17. At all relevant times, Defendants are or were jointly and severally liable for all injuries and damages alleged herein.

**JURISDICTION AND VENUE**

18. Plaintiff incorporates and realleges all paragraphs above.

19. The Court has jurisdiction over Plaintiff's collective action claims under the FLSA, 29 U.S.C. §216(b), which states: "An action to recover the liability prescribed … may be maintained against any employer in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated."

20. Because Plaintiff's FLSA claim arises under federal law, the Court has federal question jurisdiction pursuant to 28 U.S.C. §1331.

21. In addition, the Court has supplemental jurisdiction over Plaintiff's Nevada state-law claims under 28 U.S.C. §1367 because those claims derive from a common nucleus of operative fact regarding Defendants' unlawful treatment of Plaintiff, and form part of the same case and controversy.

22. Venue is proper in this Court because Plaintiff resided and worked for Defendants within this judicial district and the events and omissions giving rise to Plaintiff's claims occurred within this judicial district. See 28 U.S.C. 1391(b).

**FACTUAL ALLEGATIONS**

23. Plaintiff incorporates and realleges all paragraphs above.

24. Last Mile is a Delivery Service Partner of Amazon Logistics.

25. Amazon Logistics is the contracting arm of Amazon.

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

26. Last Mile drivers are Nevada residents who make their way to the Last Mile warehouse in Henderson, NV to pick up and deliver packages addressed to Nevada residents. They do not cross state lines.

27. Mr. Jenkins started working for Last Mile and Amazon Defendants in September 2023 as a Driver.

28. Mr. Jenkins' starting pay was $18.00 an hour and later became $19.00.

*Pre Shift Time/One Way Rounding*

29. All Plaintiff Drivers for Defendants used the Amazon Flex App to "clock in" and "out" of work.

30. However, Mr. Jenkins and all Plaintiff Drivers were required to be signed on to the Amazon Flex App pre-shift and perform work intrinsic to their work before their shift time started.

31. Mr. Jenkins' shifts almost universally started at 10:30 a.m.

32. Mr. Jenkins and Plaintiff Drivers were required to be on-site and logged into the Flex App ten to fifteen minutes before a shift began.

33. The pre-shift time was unpaid.

34. Before Mr. Jenkins and Plaintiff Drivers' shifts could begin, Mr. Jenkins and Plaintiff Drivers were required to do the following every day they worked:

a. pick up their crates of packages, their GPS device (a "rabbit"), and keys; open and load their assigned B6 truck.

b. perform a truck pre-trip inspection which requires a check of safety-critical systems, focusing on fluid levels (oil, coolant, power steering), tire condition (inch tread depth, proper pressure), brakes and lights. In addition, Mr. Jenkins and Plaintiff Drivers would check that their B6 was equipped with fire extinguishers and triangles for emergencies.

c. attend the Operation Lead's (their supervisor's) "Daily Huddles". These huddles would discuss safety, performance refreshers, operational readiness, Plaintiff Driver review metrics and route changes.

d. Mr. Jenkins and Plaintiff Drivers would then get in their trucks and wait for every other Driver on the shift to be ready to drive out. Finally, when the last Driver was ready to

drive out, Mr. Jenkins and Plaintiff Drivers would be paid beginning at their shift time, as they actually drove the truck off the property.

35. Plaintiff used the Amazon Flex App to clock in and out, but was required to show up early and be signed into the App and performing work before the scheduled shift start time.

36. Plaintiff's shifts were uniformly scheduled at 10:30 a.m., and timekeeping reflected one-way rounding that favored the employer: when clock-ins occurred after 10:30 a.m., the recorded start time matched the later time without any backward rounding to capture pre-shift work time.

37. For example, if the last Driver on the shift was not ready to drive out until 10:35 a.m., for example, then everyone's shifts started at 10:35, even though each Driver had begun working between 10:15 and 10:20.

*Unjust Enrichment*

38. The Rabbit and the Amazon Flex App provide predetermined routes and timing for Plaintiff Drivers.

39. The predetermined routes were idealized and did not take into account many realities: unknown traffic, accidents, lack of parking availability.

40. The predetermined routes and times, and Plaintiff Drivers' adherence to that schedule, were performance metrics used to measure Plaintiff Drivers' work.

41. The Amazon Flex App scheduled two ten-minute breaks during a Plaintiff Driver Shift.

42. However, because the pre-determined routes were idealized, Plaintiff Drivers were perpetually playing catch-up to meet their required metrics.

43. One obvious way for Plaintiff Drivers to catch up was to work through their breaks.

44. Accordingly, most of the time Plaintiff Drivers for Last Mile and Amazon worked through their breaks.

45. Last Mile and Amazon benefited from the work Plaintiff Drivers did during their "breaks", and Plaintiff Drivers were practically deprived of taking time for themselves by the pressure of the performance metrics.

/ / /

/ / /

*Rigged Lunch*

46. Mr. Jenkins and Plaintiff Drivers were frequently scheduled for 10.5-hour shifts.

47. Mr. Jenkins and Plaintiff Drivers were not permitted to log out for their lunch break.

48. The Amazon Flex App would automatically deduct 30 minutes from their shifts.

49. Because Mr. Jenkins and the Plaintiff Drivers were tracked by the Last Mile Operations Lead or other Management, Defendants had actual knowledge that many times the lunch breaks were not taken because the trucks would not be still for 30 minutes.

50. On days that Mr. Jenkins and Plaintiff Drivers completed their work in more than eight but less than ten hours, Mr. Jenkins and Plaintiff Drivers had no way to reclaim the lunch break time.

51. If Mr. Jenkins and Plaintiff Drivers actually took a lunch break, the Operations Lead or other management would call them to get the truck moving.

52. The Flex App has a "standings" feature in the dashboard that tracks each Driver's delivery rating: "Fantastic, Great, Fair, or "At Risk."

53. If Mr. Jenkins and Plaintiff Drivers actually took their paid breaks and unpaid lunch period, their rating would be at risk.

54. Each Plaintiff Driver learns this at the beginning of their time working for Defendants by management phone calls threatening their rating or downgrading their rating.

55. Therefore, the unpaid lunch break and paid breaks required by Nevada law were *de facto* unavailable to Mr. Jenkins and Plaintiff Drivers.

56. Defendants' GPS-based systems and logistics tools tracked Plaintiff Drivers' locations and idling, giving management actual or constructive knowledge of whether drivers stopped for meal or rest breaks.

57. As a result of the automatic deduction and denied breaks, Mr. Jenkins and Plaintiff Drivers frequently worked over 10 hours per day but were paid as if they worked 10 hours.

*Records Manipulation*

58. Management manipulated Plaintiff's time records before payroll, resulting in underpayment of straight-time and overtime hours worked.

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

59. Between 12/31/2023 and 1/13/2024, Plaintiff worked 92 hours (including at least 20 overtime hours) but was paid for only 42 hours. Plaintiff's actual 92 hours are recorded (except pre-shift time and working through lunch) in the Flex App but his ADP pay statement reflects that he had worked only 42 hours.

60. Similarly, between 2/11/2024 and 2/24/2024, Plaintiff worked a total of 73.5 hours according to the Flex App but his ADP pay statement reflects that he had only worked ten hours.

61. When Plaintiff complained to managers about missing hours, he was told he was paid according to the paystub rather than his time records.

*Overtime and Breach of Contract*

62. Mr. Jenkins and Plaintiff Drivers were not paid overtime when they worked more than 40 hours in a week.

63. Mr. Jenkins worked for sixty hours between January 7, 2024 and January 13, 2024. He was paid no overtime. In the fourteen-day pay period encompassing this week, Mr. Jenkins worked a total of 92 hours and was only paid straight time for forty-two hours.

64. Mr. Jenkins worked for forty-two hours between February 18, 2024 and February 24, 2024. In the fourteen-day pay period encompassing this week, Mr. Jenkins was paid no overtime and was only paid straight time for ten hours.

65. Mr. Jenkins worked his last shift for Defendants on or about March 2, 2024.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

66. Plaintiff incorporates and realleges all paragraphs above.

67. Plaintiff brings the FLSA claims as a collective action under 29 U.S.C. § 216(b) on behalf of himself and:

All current and former non-exempt delivery drivers of Last Mile DSP LLC in the United States who worked at any time three years prior to filing of this Complaint through the date of final disposition (the "FLSA Collective").

68. Plaintiff is similarly situated to the FLSA Collective because Defendants' common policies—one-way rounding, pre-shift work, automatic meal deductions despite on-duty work, break denials, and time record manipulation—resulted in unpaid straight time and overtime.

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

69. Defendants deducted a 30-minute meal period regardless of whether Plaintiff Drivers actually took the break.

70. Defendants did not pay Plaintiff and Plaintiff Drivers for the hours they actually worked when Defendants knowingly mis-recorded actual hours worked for purposes of pay.

71. At all relevant times, Plaintiff and FLSA Collective Members were each an "employee" within the meaning of the FLSA. *See* 29 U.S.C. § 203(e), (g).

72. At all relevant times, each Defendant was an "employer" of Plaintiff and FLSA Collective Members within the meaning of the FLSA. *See* 29 U.S.C. § 203(d), (g).

73. Plaintiff and the FLSA Collective Members are similarly situated based on the same factors of commonality, typicality, and adequacy enumerated below. *See infra*

74. Upon information and belief, Last Mile and Amazon employs, or has employed over 100 putative FLSA Collective Members during the FLSA Collective Period.

75. For purposes of providing notice to the putative FLSA Collective, the names, addresses, email addresses, and phone numbers of FLSA Collective Members are readily available from Defendants. Timely notice of the pendency of this FLSA collective action along with a 'consent to join' form can and should be provided to putative FLSA Collective Members by mail or email, along with posting and distributing copies at Last Mile.

76. Plaintiff is informed, believes, and thereon alleges that more than 100 putative FLSA Collective Members will sign and file consents to join the FLSA collective action.

77. Pursuant to 29 U.S.C. §§ 216(b) and 256, Plaintiff hereby consents to sue Defendants for violations of the FLSA and become a member of the FLSA Collective. Plaintiff's consent to sue is attached hereto as Exhibit A.

**CLASS ACTION ALLEGATIONS (RULE 23 – NEVADA CLASS)**

78. Plaintiff incorporates and realleges all paragraphs above.

79. Plaintiff brings this action on behalf of himself and Nevada Class Members (the "Nevada Class") as a class action under Federal Rule of Civil Procedure 23.

80. Specifically, Plaintiff brings the Nevada wage claims and Nevada common law claim as a Rule 23(b)(3) class action on behalf of:

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

All current and former non-exempt delivery drivers employed by Last Mile DSP LLC in Nevada at any time from four years prior to filing this Complaint through the date of judgment (the "Nevada Class").

81. At all relevant times, Plaintiff and Nevada Class Members were each an "employee" within the meaning of Nevada law. *See* NRS 608.010.

82. At all relevant times, Last Mile and Amazon were an "employer" of Plaintiff and Nevada Class Members within the meaning of Nevada law. *See* NRS 608.011.

83. At all relevant times, Last Mile and Amazon implemented, maintained and enforced an unlawful straight pay policy that deprived Plaintiff and Nevada Class Members from being paid for all hours they worked.

84. At all relevant times, Last Mile and Amazon implemented, maintained and enforced an unlawful overtime pay policy that deprived Plaintiff and Nevada Class Members from being paid for all overtime owed based on their regular rate of pay.

85. At all relevant times, Last Mile and Amazon implemented, maintained and enforced an unlawful overtime policy that deprived Plaintiff and Nevada Class Members from being paid for all hours worked.

86. Defendants Last Mile and Amazon had a duty as well as the financial ability, to compensate Plaintiff and Nevada Class Members for all hours worked, both straight time and overtime hours, but willfully, knowingly, or intentionally failed to do so in order to save money, increase profits or both.

87. Last Mile and Amazon continue to maintain an unlawful company-wide policy or practice of depriving non-exempt employees of their full wages for each hour worked.

88. Last Mile and Amazon continue to maintain an unlawful company-wide policy or practice of depriving non-exempt employees of their full overtime wages.

89. To date, neither Plaintiff nor Nevada Class Members have been paid all overtime wages or other damages owed by Last Mile and Amazon.

90. Class treatment of Nevada Class Members is appropriate under Rule 23 for the following reasons:

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

A. ***Numerosity***: The Class is so numerous that joinder is impracticable and the disposition of their claims on a class (rather than individual) basis will conserve resources of the parties and judicial system. While the number of Nevada Class Members is unknown at this time, this information can be readily ascertained from Defendants' business records. Upon information and belief, Defendant employs, or has employed, over 100 Nevada Class Members during the Class Period.

B. ***Commonality***: Common questions of law and fact exist and predominate as to Plaintiff and Nevada Class Members, including, but not limited to: (1) whether Defendants' requirement that Plaintiffs perform tasks prior to logging in constitutes failure to pay for all hours worked, whether at their regular rate of pay or overtime; (2) whether Defendants were unjustly enriched by automatically logging Plaintiff Drivers out for breaks they were not able to take; (3) whether Defendants failed to pay for all hours worked; (4) whether Defendants failed to pay overtime; (5) whether Plaintiff and Nevada Class Members have been paid all wages due and owing upon separation from employment.

C. ***Typicality*****:** Plaintiff's claims are typical of the claims of Nevada Class Members because Plaintiff and Nevada Class Members were subject to the same employment policies and practices of Last Mile and Amazon during the Class Period, and each of them sustained damages. Proof of a common or single state of facts will therefore establish the right of Plaintiff and Nevada Class Members to recover.

**D.** ***Adequacy:*** Plaintiff will fairly and adequately represent the interests of Nevada Class Members because Plaintiff is himself a Nevada Class Member and has the same legal and factual issues as Nevada Class Members and has no interests antagonistic to Nevada Class Members. Plaintiff has retained legal counsel competent and experienced in class actions, including labor and employment litigation. Plaintiff and his counsel are aware of their fiduciary responsibilities to Nevada Class Members and are determined to discharge those duties diligently by vigorously seeking the maximum possible recovery for Nevada Class Members.

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

**E.** ***Superiority:*** A class action is superior to other available means for the fair and efficient adjudication of this controversy. Each Class Member has been damaged and is entitled to recovery by reason of Defendants' illegal policies and practices. Class action treatment will permit a relatively large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of effort and expense. Furthermore, the prosecution of individual lawsuits by each Nevada Class Member would present the risk of inconsistent and contradictory judgments, along with the potential for establishing inconsistent standards of conduct for Defendant and other employers. Consequently, an important public interest will be served by addressing this matter as a class action.

91. Plaintiff reserves the right to modify or redefine 'Nevada Class Members' for purposes of this action and to add subclasses as appropriate based on further investigation, discovery, and theories of liability.

**FIRST CAUSE OF ACTION**

**Failure to Pay Minimum Wages in Violation of the FLSA, 29 U.S.C § 206**

**(On Behalf of Plaintiff and the FLSA Collective)**

92. Plaintiff incorporates and realleges all paragraphs above.

93. Under the FLSA, "Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the [federal minimum wage rate] …." 29 U.S.C. § 206(a)(l).

94. As a result of Defendants policies and practices, Plaintiff and FLSA Collective Members were not paid minimum wages in that:

a. They were not paid for pre-shift time.
b. They were not paid for hours they worked that are reflected in the App but ignored in the pay stub.
c. They were not paid for the 30 minutes they worked through their lunch break.

95. Defendants' violation of the FLSA has been willful, and Defendants knew or should have known that their policies and practices were unlawful.

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

**SECOND CAUSE OF ACTION**

**FLSA Overtime Violations (29 U.S.C. § 207)**

**(On Behalf of Plaintiff and the FLSA Collective)**

96. Plaintiff incorporates the allegations above.

97. Defendant failed to pay one and one-half times the regular rate for all hours over 40 in a workweek.

98. Plaintiff worked 60 hours in the workweek of 1/7–1/13/2024 but was paid for only 40 hours (no overtime).

99. Defendants' violations were willful. Plaintiff and the FLSA Collective seek unpaid overtime, an equal amount as liquidated damages, fees, costs, and interest.

**THIRD CAUSE OF ACTION**

**Failure to Pay Wages for Each Hour Worked in Violation of NRS 608.016**

**(On Behalf of Plaintiff and the Nevada Class Members)**

100. Plaintiff incorporates the allegations above.

101. Defendant failed to pay Plaintiff and the Nevada Class for all hours worked due to: (a) one-way rounding that excluded compensable pre-shift and other work time; (b) automatic 30-minute meal deductions when drivers remained on duty; and (c) manipulation of time records that removed compensable hours.

102. Plaintiff was required to begin work before the scheduled start time while logged into the Amazon Flex App, yet recorded start times were rounded in Defendants' favor.

103. Defendant deducted 30 minutes daily for a meal period even when Plaintiff worked through or could not take an uninterrupted, off-duty meal period.

104. Defendants' practices violated NRS 608.016. Plaintiff and the Nevada Class seek unpaid wages, attorneys' fees and costs, and interest.

**FOURTH CAUSE OF ACTION**

**Failure to Pay Overtime in Violation of NRS 608.018**

**(On Behalf of Plaintiff and the Nevada Class)**

105. Plaintiff incorporates the allegations above.

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

106. Defendant failed to pay one and one-half times the regular rate of pay for hours Plaintiff and Plaintiff Drivers worked over 40 in a workweek.

107. Plaintiff frequently worked more than 10 hours per day but was paid as if he worked only 10 hours due to an automatic 30-minute deduction and denied breaks.

108. During identified weeks, Plaintiff worked in excess of 40 hours but was paid for substantially fewer hours, including zero overtime for a 60-hour week.

109. Defendants' violations were willful.

110. Wherefore, Plaintiff and the Nevada Class seek unpaid overtime, fees, costs, and interest.

**FIFTH CAUSE OF ACTION**
**Waiting Time Penalties (NRS 608.020–.050)**
**(On Behalf of Plaintiff and Nevada Class Members Separated from Employment)**

111. Plaintiff incorporates the allegations above.

112. NRS 608.020 provides that "[w]henever an employer discharges an employee, the wages and compensation earned and unpaid at the time of the discharge shall become due and payable immediately."

113. NRS 608.030 similarly provides that an employee who resigns or quits must be paid within seven days or on the next regular payroll date, whichever earlier occurs.

114. NRS 608.040(1) states that "[w]ithin 3 days after the wages or compensation of a discharged employee becomes due; or …[o]n the day the wages or compensation is due to an employee who resigns or quits, the wages or compensation of the employee continues at the same rate from the day the employee resigned, quit or was discharged until paid for 30 days, whichever is less."

115. NRS 608.050 grants a "lien" to every employee separated from employment for the purpose of collecting any wages or compensation due and owing, including up to 30 additional days of compensation "without rendering any service therefor."

116. Here, by failing to compensate Plaintiff and Nevada Class Members separated from employment for all hours worked and all overtime hours worked at the applicable regular rate of pay,

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

Last Mile and Amazon have failed to remit all wages due and owing to Plaintiff and Nevada Class Members separated from employment.

117. Wherefore, Plaintiff and Nevada Class Members demand up to thirty (30) days wages according to proof pursuant to NRS 608.040 and NRS 608.050, together with attorney's fees, costs and interest as provided by law.

**SIXTH CAUSE OF ACTION**

**Unjust Enrichment (In the Alternative; On Behalf of Plaintiff and the Nevada Class)**

118. Plaintiff incorporates the allegations above.

119. Last Mile DSP and Amazon were enriched by Plaintiff and Plaintiff Drivers working through their breaks and lunch periods.

120. Plaintiff and Plaintiff Drivers worked through periods where they were not paid but Last Mile and DSP were enriched by their work.

121. Defendants benefitted from uncompensated labor time, including time shaved through one-way rounding, automatic meal deductions, and denial of rest periods that were not paid.

122. It would be unjust for Defendants to retain the benefit of unpaid labor; restitution is warranted in the alternative to statutory wage remedies.

123. Defendants made breaks *de facto* impossible and then benefitted from the labor that impossibility provided and they did so willfully.

124. Wherefore Plaintiff and Plaintiff Drivers demand restitution of their unpaid labor.

**SEVENTH CAUSE OF ACTION**
**Breach of Contract**
**(On Behalf of Plaintiff and the Nevada Class)**

125. Defendants' representations to Plaintiff through the dashboard in the Flex App and training and the documentation that Plaintiff and Plaintiff Drivers signed, created a legitimate expectation of continued employment for the Plaintiff and Plaintiff Drivers as long as the metrics set out daily were adhered to.

126. Plaintiff and Plaintiff Drivers' legitimate expectation of employment included an understanding that they would be paid for the hours they were driving as reflected in the Flex App.

127. Defendants failed to pay Plaintiff and the Plaintiff Drivers for the hours they were

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

driving as reflected in the Flex App.

128. Whether Plaintiff's contract with the Defendants was at-will or implied, the contract still required Defendants to pay Plaintiff for the hours worked.

129. Defendants therefore breached the contract of employment for Plaintiff and Plaintiff Drivers.

130. Wherefore, Plaintiff and Class Members demand payment by Defendants of their benefit-of-the-bargain damages and all other consequential damages, together with attorneys' fees, costs, and interest as provided by law.

## PRAYER FOR RELIEF

Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendant as follows:

1. Certifying the Nevada claims as a class action under NRCP 23 and appointing Plaintiff as Class Representative and his counsel as Class Counsel;

2. Conditionally certifying the FLSA claims as a collective action under 29 U.S.C. § 216(b), authorizing notice to the FLSA Collective, and equitably toll the statute of limitations;

3. Awarding unpaid straight-time wages under NRS 608.016, and unpaid overtime wages under NRS 608.018 and 29 U.S.C. § 207, according to proof;

4. Awarding waiting time penalties under NRS 608.040–.050 to Nevada Class members separated from employment, according to proof;

5. Awarding FLSA liquidated damages under 29 U.S.C. § 216(b);

6. Restitution and/or disgorgement for unjust enrichment, in the alternative;

7. Award damages for breach of contract to Plaintiff and the Nevada Class

8. Pre-judgment and post-judgment interest as permitted by law;

9. Reasonable attorneys' fees, costs, and expenses as permitted by statute;

10. Exemption from arbitration pursuant to N.A.R. 3 and 5; and

11. Such other and further relief as the Court deems just and proper.

/ / /

/ / /

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

DATED: February 25, 2026

**RAFII & ASSOCIATES, P.C.**

*/s/ Rachel Mariner*
RACHEL MARINER
*Attorney for Plaintiff*

# EXHIBIT A

EXHIBIT A

# Consent To Sue Under The Fair Labor Standards Act

Print Name: Rayshawn Jenkins

1. I hereby consent to be a party plaintiff in a collective action lawsuit against **LAST MILE DSP, LLC** and/or any other named defendants ("Defendants") pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*

2. I understand this lawsuit seeks to recover unpaid minimum wages, overtime compensation, liquidated damages, attorneys' fees, costs, and other relief available pursuant to the FLSA.

3. I designate the law firm of RAFII & ASSOCIATES, P.C., and any other attorneys with whom they may associate, as my attorneys in this lawsuit to prosecute my FLSA and related claims.

4. I understand I have the right to pursue my claims individually on my own behalf. I agree to serve as the Class Representative if the Court so approves. If someone else serves as Class Representative, then I designate such Class Representative(s) as my agents to make decisions on my behalf concerning the litigation and all other matters pertaining to this lawsuit.

5. I authorize the law firm and attorneys at RAFII & ASSOCIATES, P.C., to use this consent to file my claims in a separate lawsuit, class/collective action, or arbitration against Defendants.

Signed by Rayshawn Jenkins
Signature: Rayshawn Jenkins I approve this document 2/24/2026 10:56 PM UTC    Date: 02/24/2026